COUNTRY CLUB HILLS HOMEOWNERS ASSOCIATION ET AL., APPELLEES, *v.* JEFFERSON METROPOLITAN HOUSING AUTHORITY ET AL., APPELLANTS.

(No. 81-J-7—Decided April 10, 1981.)

*Mr. Gary M. Stern,* for appellees.

*Mr. Dominic J. Bianco,* for appellant Jefferson Metropolitan Housing Authority.

*Mr. Donald C. Steiner,* for appellant Eslinger & Rappaport.

LYNCH, P.J. Defendants-appellants are appealing the February 17, 1981 judgment of the court of common pleas which enjoined them from commencing construction of one hundred units of low and moderate income housing in the Country Hills Subdivision of the city of Steubenville.

On June 11, 1980, eighty-six individuals and an unincorporated association of persons filed a taxpayers' suit to obtain subject injunction. In their complaint the individual plaintiffs alleged that they are property owners and taxpayers of Jefferson County, Ohio, and resided adjacent to or in proximity to subject housing project. In their answers, both defendants either denied or refused to admit the plaintiffs' allegations. Upon a review of the entire record of this case, we find that no evidence was introduced to prove that plaintiffs were property owners and taxpayers of Jefferson County, Ohio.

Defendant-appellant Jefferson Metropolitan Housing Authority, which will hereinafter be referred to as "JMHA," is

a governmental corporation of the state of Ohio which was created pursuant to R.C. 3735.27 *et seq.* On March 5, 1980, JMHA selected defendant-appellant Eslinger & Rappaport, which will hereinafter be referred to as "E & R," as developer for Turnkey Construction of subject one hundred units subject to approval by the Department of Housing and Urban Development ("HUD").

By letter dated June 6, 1980, JMHA notified E & R that E & R's proposal for subject housing project had been selected subject to a number of conditions and requirements.

On July 3, 1980, JMHA received a letter from HUD that the preliminary site report had not been modified.

This evidence established that subject housing project would be funded entirely by the federal government; that no state, county or city funds would be used for subject project; that the estimated cost of this project would be between four and five million dollars, and that if JMHA should build subject housing project, it would be exempt from property taxes pursuant to R.C. 3735.34, but would make payments in lieu of taxes pursuant to R.C. 3735.35.

In their amended complaint plaintiffs alleged that as taxpayers of the Indian Creek School District they would suffer special damage to their own property rights different in character than that sustained by the public generally due to the fact that if subject housing project were built it would be exempt from all taxation pursuant to R.C. 3735.34.

Defendants' assignments of error are as follows:

"1. The trial court erred in overruling defendants-appellants' motion for dismissal of plaintiffs-appellees' case and for judgment in their favor made at the end of plaintiffs-appellees' case.

"2. The judgment of the trial court was contrary to law.

"3. The judgment of the trial court was against the greater weight of the evidence.

"4. The trial court's findings of fact were not supported by probative evidence.

"5. Even if the trial court did not err in its findings of fact, it erred in applying the law to said facts.

"6. The trial court abused its discretion in issuing the injunction."

Defendants, in their brief, did not discuss each assignment of error separately but their arguments were presented under issue headings; therefore, we will do the same.

Defendants' first two issues are that plaintiffs had no standing as a matter of law to maintain a "Common Law Taxpayers' Suit."

The seventh paragraph of the headnotes of *Cuyahoga Metropolitan Housing Authority* v. *Cleveland* (N.D. Ohio 1972), 342 F. Supp. 250 [65 O.O.2d 227], states , at page 257:

"* * * a metropolitan housing authority is a political subdivision of the State of Ohio which by delegation performs state functions which are governmental in character."

The first paragraph of the syllabus of *State, ex rel. Masterson,* v. *Ohio Racing Comm.* (1954), 162 Ohio St. 366 [55 O.O. 215], is as follows:

"In the absence of statutory authority, a taxpayer lacks legal capacity to institute an action to enjoin the expenditure of public funds unless he has some special interest therein by reason of which his own property rights are placed in jeopardy."

In *Masterson,* the court stated at page 368, as follows:

"* * * private citizens may not restrain official acts when they fail to allege and prove damage to themselves different in character from that sustained by the public generally. 39 Ohio Jurisprudence, 22, Section 12; 52 American Jurisprudence, 3, Section 3."

See, *Andrews* v. *Ohio Building Authority* (1975), 74 O.O. 2d 184.

Since federal funds are being used to finance this project, it is clear that no part of the funds to be expended on subject housing project can be shown by plaintiffs to damage them differently than the public generally. However, plaintiffs claim that as taxpayers of the Indian Creek School District they will suffer special damage to their property rights different in character than that sustained by the public generally due to the fact that if subject housing project were built it would be exempt from all taxation pursuant to R.C. 3735.34.

There is no evidence in the record of this case that proves that plaintiffs were property owners and taxpayers of Jefferson County. When defense counsel called this fact to the attention of the trial court, counsel for plaintiffs asked the trial court, pursuant to Evid. R. 201(D), to take judicial notice that the plaintiffs are property owners pursuant to Evid. R. 201(B), which provides as follows:

"A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Counsel for plaintiffs argued that the question whether plaintiffs were property owners and taxpayers of Jefferson County could be readily determined at the county recorder's office in the courthouse.

The trial court in its "Findings of Fact" found that plaintiffs were property owners and taxpayers of the city of Steubenville and the Indian Creek School District but did not state the basis of such finding.

We hold that placing the burden on the trial judge to check the records of the county recorder's office to determine whether plaintiffs were property owners and taxpayers is not "capable of * * *

ready determination" within the meaning of Evid. R. 201(B). The burden of proof is on the plaintiffs and not on the trial judge. All that was necessary was for some plaintiffs to testify that they were property owners and taxpayers.

Therefore, we hold that the trial judge could not take judicial notice that plaintiffs were property owners and taxpayers under the facts of this case.

Even if such plaintiffs had established that they were property owners and taxpayers and resided near subject project, their alleged increase in taxation caused by the construction of subject public housing project would be the same as every other property owner and taxpayer in the Indian Creek School District. The evidence established that if plaintiffs were property owners and taxpayers they would only be a part of the property owners and taxpayers of said school district.

Furthermore, plaintiffs contend that their damage would be caused by the fact that if subject housing project were built it would be exempt from all taxation pursuant to R.C. 3735.34. It should be noted that R.C. 3735.35 provides that payments in lieu of taxes be made by a metropolitan housing authority.

We are unaware of any authority that permits an injunction enjoining the construction of a public facility on the basis of alleged damages caused by express statutory provisions which apply to such public facility. See *White* v. *Long* (1967), 12 Ohio App. 2d 136 [41 O.O.2d 200].

We hold that plaintiffs had no standing as a matter of law to maintain this taxpayers' suit. Therefore, they lacked legal capacity to institute this action to enjoin the construction of subject housing project. We specifically hold that this would be the situation even if plaintiffs had established that they were property owners and taxpayers and resided near subject housing project.

Defendants' remaining issues are that if plaintiffs had a common-law taxpayers'

action, plaintiffs failed to establish any clear right to an injunction because they failed to prove any wrongdoing by defendants or any damage to themselves which would warrant the granting of an injunction.

We have already held that plaintiffs lacked legal capacity to institute this action. However, in the event that we are in error on this decision, we will discuss the remaining issues in this case.

In *White* v. *Long, supra,* the court, at page 140, stated as follows:

"It is said that caution should be exercised in granting injunctions, and especially so in cases affecting a public interest where the court is asked to interfere with or suspend the operation of important public works or to control the action of another department of government."

In his "Findings of Fact and Conclusions of Law" the trial judge stated that the reason for his granting subject injunction is the failure of defendant Jefferson Metropolitan Housing Authority to submit the location, extent or general features of the proposed project to the Planning Commission of the city of Steubenville for the advice of such commission pursuant to R.C. 3735.44, which provides as follows:

"The planning, zoning, and sanitary laws of the state and of any political subdivision or agency thereof in which a housing project is located shall apply to housing projects of a metropolitan housing authority to the same extent as if said projects were planned, constructed, owned, or operated by private persons. All powers granted in said laws or in any municipal charter to or over privately owned land, buildings, or structures are hereby granted over and in relation to housing projects or authorities. In the planning and location of any housing project, an authority shall take into consideration the relationship of the project to any state, regional, county, or municipal plan. Before any housing project of an authority is determined upon by the authority or any real estate is acquired or any agreement for its acquisition is made, the location, extent, and general features of the proposed layout shall be submitted to the planning commission of the municipal corporation or other political subdivision in which the proposed project is located, for the advice of such planning commission upon the proposed location, extent, and general features of the layout."

Counsel for E & R contends that R.C. 3735.44 is directory rather than mandatory. We hold that R.C. 3735.44 is mandatory.

The Director of JMHA testified that they would comply with R.C. 3735.44 as soon as the plans for subject housing project had progressed enough to submit to the Planning Commission of the city of Steubenville.

On June 23, 1980, the trial court issued a preliminary injunction ordering defendants, pending the determination of this action, from engaging in any further planning, development, acquisition of property, execution of contracts, or construction with respect to subject housing project. Defendants interpreted this preliminary injunction as meaning that they could not comply with R.C. 3735.44 pending the determination of this action. We hold that this was a reasonable interpretation of the language of this preliminary injunction.

As a result of a hearing on January 21, 1981, the trial court issued the permanent injunction on February 17, 1981, in which it enjoined the construction of subject housing project.

Counsel for E & R has confused subject issue by his erroneous interpretation of R.C. 3735.44, but the record is clear that JMHA understood its obligation pursuant to this statute and intended to comply with it.

There is a factual question as to what point in time that JMHA should have submitted its plans to the Planning Commis-

sion of the city of Steubenville. We find that the earliest possible time would be June 6, 1980 when JMHA notified E & R that its proposal for subject housing project had been selected. JMHA contends that its plans had not progressed enough on June 6, 1980 to submit them to the planning commission.

However, even if the June 6, 1980 date was correct, which we feel is questionable, JMHA was sued on June 11, 1980 and on June 23, 1980 was ordered by the trial court to refrain from any further planning. Then on February 17, 1981 the trial court enjoined JMHA from commencing construction of subject housing project.

We feel the result that the trial court stated it wanted to accomplish could have been obtained by a mandatory injunction that JMHA comply with R.C. 3735.44 before it commenced construction of subject housing project (29 Ohio Jurisprudence 2d 230, Injunctions, Section 53), rather than enjoining the construction of the entire housing project. We have already discussed the issue of damages.

We hold that under the facts of this case, the issuance of both the preliminary and permanent injunctions by the trial court was both arbitrary and an abuse of discretion. The issuance of the preliminary injunction not only prevented JMHA from complying with R.C. 3735.44 during the period that it was in force but also unnecessarily delayed subject housing project.

This was called to the trial court's attention at the January 21, 1981 hearing but the trial court issued the permanent injunction despite the fact that the Director of JMHA testified that it intended to comply with R.C. 3735.44.

The judgment is reversed and the injunction is dissolved; final judgment for defendants.

*Judgment accordingly.*

O'NEILL and DONOFRIO, JJ., concur.